UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | No. 6:20-CR-03-CHB-HAI-4 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| CAITLIN SUE MAGGARD, ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Boom (D.E. 181), the Court considers reported violations of supervised release conditions by Defendant Caitlin Maggard.

**I.**

District Judge Boom entered Judgment against Defendant in October 2020 on Defendant's plea to one count of conspiracy to distribute a mixture or substance containing 50 grams or more of a mixture or substance containing methamphetamine. D.E. 100 (plea agreement); D.E. 140 (Judgment). Defendant was sentenced to 35 months of imprisonment followed by three years of supervised release. D.E. 140 at 2-3. Defendant was released to home confinement on February 15, 2021. She then entered the Dismas Charities halfway house on September 29, 2021, and stayed there until February 15, 2022.

On February 22, 2022, the United States Probation Office ("USPO") submitted a "12A" noncompliance report. D.E. 173. It stated:

> On February 22, 2022, Maggard admitted that she had consumed heroin/fentanyl on three occasions since her release from custody, with the most recent use on February 21, 2022. Maggard expressed the desire to enter an intensive outpatient treatment program (IOP), with supplementary medication-assisted treatment for opioid use.

>Additionally, on February 22, 2022, the undersigned received a laboratory report from Dismas Charities Lexington advising that Maggard tested positive for fentanyl on February 14, 2022, prior to her release to supervision.

*Id*. The 12A requested that "no action be taken at this time so that Maggard can participate in IOP," and reported Defendant had "an intake assessment scheduled for February 23, 2022, at Roaring Brook, an IOP in Lexington, Kentucky." Judge Boom approved the request. *Id*. Defendant ultimately was admitted to short-term inpatient substance abuse treatment through StepWorks in Lexington on March 8, 2022. However, upon admission, her urine screen tested positive.

Accordingly, on March 9, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report, "On March 8, 2022, Maggard submitted a urine drug test that was positive for fentanyl," and she admitted she had used heroin or fentanyl on March 4. The Defendant's signed admission form is attached to the Report.

Violation #1 of the Report charges a Grade C violation of the condition that prohibits "unlawful use of a controlled substance."

Violation #2 charges a violation of the condition that Defendant must not commit another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of fentanyl, on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On March 24, 2022, the Court conducted an initial appearance via summons pursuant to Rule 32.1. D.E. 180. Because Defendant was still in treatment in Lexington and lacked

transportation, she appeared by video in the presence of her therapist. The government requested detention, but the Court found Defendant met her burden under Rule 32.1(a)(6) to justify continued release. Because Defendant was not detained, no right to a preliminary hearing was triggered. The Court admonished Defendant to abide by all conditions of the existing judgment, with the additional conditions to be made effective through Standard Condition No 13 that she:

1. Follow all program requirements and successfully complete the program at StepWorks;

2. As instructed (including possible continued placement in inpatient treatment) by the USPO, upon release from Step Works, report to Sober Living and follow all rules and directions at Sober Living;

3. Contact USPO Markwell on a daily basis following discharge from StepWorks; and

4. Submit to GPS monitoring.

*Id*.

A final hearing was set before Judge Boom, but Judge Boom referred further proceedings to the undersigned. D.E. 181.

Defendant finished her short-term inpatient treatment at StepWorks on April 7. The probation officer provided the Court with a letter from Defendant's StepWorks therapist, Annie Greis. The letter says Defendant was compliant with all program requirements. She actively participated in group sessions "without hesitation." She "made a strong effort to participate in groups and individual sessions," despite her anxiety about the legal process and her separation from her daughter. The letter says Defendant "can be successful in her recovery should she give full faith and effort" to the upcoming IOP program and stay connected to her support group and counseling. Upon her release from StepWorks, Defendant transferred to intensive outpatient

treatment at Roaring Brook in Lexington, and she is housed at a "sober living" facility at the time of this Recommendation.

At the final hearing on April 11, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 177. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations in the Report. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both. The United States thus established Violations #1 and #2 under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine mixture, a Class B felony. *See* 21 U.S.C. §§ 841, 846. Such a conviction carries a 36-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of I (the category at the time of the conviction

in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is four to ten months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the probation officer announced that Defendant had been given a drug screen that day, which was negative upon instant testing. Additionally, Defendant's peer-support person from StepWorks, Alison Grigsby, appeared by video.

The Court raised the question of whether revocation was mandatory. Typically, when revocation proceedings involve a positive drug test, the defendant is charged with violating the mandatory condition that the defendant "must not unlawfully possess a controlled substance." This condition, which comes straight from 18 U.S.C. § 3583(d), is the second of the mandatory conditions in Defendant's judgment. D.E. 140 at 3. Here, although the Report charges Defendant with "unlawful use of a controlled substance" and committing the federal crime of methamphetamine possession, it does not charge a violation of the mandatory no-possession condition.

Subsection (g)(1) of § 3583 provides for "mandatory revocation for possession of a controlled substance" when the defendant "possesses a controlled substance in violation of the condition set forth in subsection (d)." That "subsection (d)" condition would appear to be the

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

mandatory condition "that the defendant not unlawfully possess a controlled substance"—a condition whose violation was not charged in this case. None of the other subsection (g) situations exists here, either. Revocation is not *statutorily* mandated in this case.[2]

The government recommended a penalty of revocation with four months' imprisonment and imposition of a new three-year term of supervision upon release. The government recommended that the release period begin with intensive outpatient treatment. Although the government recognized that Defendant is undergoing treatment and making improvements, the government argued that revocation was warranted due to the severe breach of the Court's trust, which is tied up with Defendant's history and characteristics.

Looking to the underlying conviction, the government observed that Defendant was a passenger and driver with codefendant Moberly. Their role in the drug-distribution conspiracy ended with a traffic stop. Defendant admitted at the stop that the Xanax, fentanyl, heroin, marijuana, and gabapentin that were discovered were hers. Defendant's PSR indicates lots of drug use. The current violations harken back to the traffic stop in that heroin and fentanyl are involved in both. The government recalled the detention hearing, where Defendant was ordered detained based largely on her continued use of drugs while on state supervised release. The government recalled there was also an issue prior to sentencing with Defendant using suboxone in jail.

At sentencing, Defendant received the benefit of the "safety valve" and a minor-role reduction. The government explained that the minor-role reduction was included in the plea

---

[2] Although it had not researched the issue, the government did not contest this construction. However, even if revocation were mandatory under subsection (g)(1), subsection (d) provides the lone exception to this rule – that the "court shall consider whether . . . an individual's current or past participation in [substance abuse treatment programs] . . . warrants an exception . . . from the rule of section 3583(g)[.]" As made clear herein, the Court finds that Defendant's recent and ongoing participation in treatment supports application of this exception.

agreement. And the government also obtained from Judge Boom a condition that Defendant appear for a status conference six months after her release. That conference was never scheduled. But the prosecutor explained that he asks for that condition only in cases where he is hopeful that the defendant will be successful with supervision and rehabilitation.

According to the government, in addition to this "grace" shown Defendant at sentencing, she received grace again when her drug use at the halfway house resulted in a "12A" rather than revocation proceedings. Defendant then went into treatment, but tested positive yet again upon intake. This series of multiple heroin/fentanyl uses was an aggravated breach of the Court's trust. Defendant also puts herself in danger by using what seems to be heroin laced with fentanyl. The government said she was "playing with real fire here."

According to the government, mitigating circumstances include that Defendant successfully completed the 30-day inpatient treatment program. Defendant is back in IOP, and the government suggested that additional IOP would be useful, so it recommended further IOP upon release from incarceration.

In terms of further supervision, the government asked to reset Defendant's three-year term. So far, she has no real period of success on release. She also has a "spotty-to-poor" history of compliance with supervision in general. She was on state release when she was using drugs and helping Moberly, leading up to her arrest on the underlying conviction.

The defense, in contrast, recommended that there be no revocation so Defendant could continue her current IOP program and sober-living placement and not lose the gains she has been making since her release from incarceration. Defense counsel said Defendant is a "unique client." She has a low criminal history, she had a minor role in the offense, and her crimes were driven totally by her addiction. Until this recent post-incarceration period, Defendant has never

received drug treatment. RDAP was not available to her. Aside from her addiction issues, she has been cooperative with Probation. She even admitted more drug use than the testing could have detected. Counsel pointed to the letter from the StepWorks therapist, which shows, according to the defense, Defendant is making "tremendous strides."

According to the defense, before her underlying arrest, Defendant was a nursing assistant, helping people in nursing homes and home health. Currently, she is working at Texas Road House. She hopes to regain custody of her daughter after treatment. Defendant's mother was present at the hearing to show support.

The defense argued that non-revocation would not just be "letting her out." Defendant is at a sober living facility and she is participating in an extendable four-month intensive addiction program. Combined with the duties of her job, she thus has little freedom and free time.

Defendant addressed the Court. She said she was sorry for breaking the Court's trust. She said she was forever grateful to her probation officer. She said she was a drug addict and she had never before gone thirty days clean like she had just done in the treatment program. Defendant further explained that she is working 30-35 hours a week because she is paying rent for both her home and the sober living facility.

The defense stated that Defendant could continue on the ankle monitor that the undersigned imposed at the initial appearance. The Court ruled that further location monitoring was not necessary, and removed that condition.

**IV.**

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

As previously discussed, revocation is not statutorily mandated here. Nevertheless, the presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). But this is an unusual situation. The Court is presented with a Defendant whose criminal behavior was driven completely by her addiction. Defendant has not received treatment before. But she recently excelled in her inpatient program. The Court is mindful of the danger of losing those gains and finds that continuing Defendant's treatment better serves the public's interest than incarceration.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant had a minor role in the drug conspiracy—she drove and accompanied codefendant Moberly while feeding her own voracious drug habit. She was found to be a minor participant and was safety valve eligible. Compared to other drug offenders in this Court, Defendant received a low sentence. But this was a function of her low criminal history. Nevertheless, the fact that her sentence was below her Guidelines Range gives the Court a basis to enlarge any incarceration sentence in this case, and the Court will not hesitate to rely upon this basis if there are future violations.

The Court next considers Defendant's history and characteristics. What is obvious is her severe drug addiction, which is what got her in trouble in the first place. What is new is that she has applied herself diligently to inpatient treatment and received a glowing report from her therapist. Defendant has been working hard since her release (in the treatment programs and at her job), which suggests she can ultimately succeed.

Another consideration is the need for additional training and treatment. Both sides agreed that Defendant had benefitted from her recent substance-abuse treatment and should be given more.

Two other factors are the need to protect the public and the need to deter criminal conduct. If, as the defense argued, Defendant's crimes result solely from addiction, then empowering her to control her addition will protect the public and prevent further crimes.

The most important factor is the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant's use of drugs is inherently dangerous, given her history of becoming involved in trafficking. She breached the Court's trust by using heroin multiple times since her release, despite being given leniency when initially caught.

The Court finds that some consequence is warranted in light of the serious breach of trust, but that continuing in treatment will further the overall goals of the Justice System. The Court thus recommends that Defendant's release not be revoked. Continued treatment is appropriate in lieu of revocation.

However, Defendant should also be required to do ten hours of community service every weekend until she finishes her IOP program. The undersigned will then schedule a status conference upon completion of the program. This community-service condition will provide a

consequence to reminder her that the threat of punishment ever looms over her while on supervision. If Defendant violates again, she will almost certainly go to prison. On the other hand, the Court also wants Defendant to internalize that good things happen to her when she participates wholeheartedly in her addiction treatment.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

For the reasons just explained, the Court's recommended non-revocation sentence is appropriate, though it varies from the four-to-ten-month Guidelines Range. In fact, the Court's recommendation is in line with the policy expressed in § 3583(d) that even *mandatory* revocation need not be imposed when "the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception." Counsel for the government indicated at the final hearing that he would not file an objection to this recommendation.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon her stipulation, Defendant be found guilty of Violations #1 and #2.

2. That Defendant's release not be revoked. Instead, she shall continue on the conditions previously imposed (D.E. 140), but NOT including the new conditions the undersigned imposed at Defendant's initial appearance (D.E. 180).

3. Imposition of a new condition requiring ten hours of community service each weekend (as directed by the probation officer), beginning the weekend of April 23 and extending to the end of Defendant's intensive outpatient drug-addiction treatment.

4. The Court requests the probation officer to contact the undersigned upon Defendant's completion of her current IOP program so that a status conference can be scheduled.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the final hearing, within **THREE days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Judge. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 13th day of April, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge